# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**DOROTHY G. AVANCE**                                        **PLAINTIFF**

**VS.**                         **No. 4:22-cv-00580 DPM/PSH**

**KILOLO KIJAKAZI, Acting Commissioner,**
  **Social Security Administration**                       **DEFENDANT**

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D.P. Marshall Jr.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

1

Plaintiff Dorothy G. Avance ("Avance") appeals the final decision of the Acting Commissioner of the Social Security Administration (defendant "Kijakazi") to deny her claim for Disabled Widow's Benefits ("DWB") and Supplemental Security Income ("SSI"). Avance maintains the Administrative Law Judge ("ALJ") erred: (1) by failing to fully and fairly develop the record; (2) at Step Two of sequential evaluation, by: (a) erroneously assessing and weighing the opinion evidence regarding her mental impairments; (b) erroneously discounting her mental subjective complaints due to non-compliance, and (c) failing to develop the record regarding non-compliance and the lack of other opinion evidence; and (3) by making a residual functional capacity ("RFC") finding without support from either examining or treating source opinion evidence. The parties have ably summarized the testimony given at the August 18, 2021 telephonic administrative hearing. (Tr. 1357-1380). The Court has carefully reviewed the record, including the medical records, to determine whether there is substantial evidence in the administrative record to support Kijakazi's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from November 8, 2017,[1] the amended alleged onset date, through September 22, 2021, the date of the ALJ's decision.

*The Administrative Hearing:*

---

[1] Avance moved to amend the onset date at the administrative hearing. (Tr. 1361).

In response to questions posed her attorney, Avance stated she was 53 years old, 5'4", weighed 172 pounds, and had a twelfth grade education. Avance was self-employed in 2017, describing the work as personal care, cooking, and performing tasks for a client.

Avance testified that the problems preventing her from working included right shoulder pain, muscle spasms, hypertension, carpal tunnel syndrome ("CTS") in both hands, being overweight, chronic pain in both knees and lower back, depression, anxiety, diabetes, osteoporosis, arthritis, neck pain, and headaches.

She described her shoulder pain as "continued sharp pain, aching" which stopped her "from even moving" at times. (Tr. 1367). Avance had CTS release surgery for her left hand which she deemed ineffective. The pain in her left hand "is a sharp pain that shoots and it hurts so bad," and she described problems with her fingers, causing her to drop things. (Tr. 1368). She indicated her knee problems stem from being "bone to bone," causing pain and an inability to squat. (Tr. 1369). She stated her physician prescribed a cane in 2019 to help with balance problems. Avance said she uses the cane when she leaves her home.

Additionally, Avance testified that she suffered complications from her diabetes, such as fatigue. Her diabetes is treated both with insulin and tablets. Avance also stated she suffered from a bone spur and a callous on her foot, and from

depression due to all of her health issues.  She was taking Oxycodone (for pain), Buspirone (for depression), and Tizanidine (for muscle spasms), and cited dry mouth as a side effect from the Oxycodone, which she takes twice daily.  Avance estimated she could stand for twenty minutes before pain in her legs and foot would require her to sit.  She also stated she could no longer cook, clean, or make her bed.

The ALJ questioned Avance about the use of her cane, noting that the consultative examiner documented that she was using a walker at a September 2020 examination.[2]  Avance explained that she confused the cane with a walker, but she did not use a walker.  Avance also stated her prescriptions for anxiety and depression were issued by her pain management doctor, and she was not being seen by a mental health professional.  (Tr. 1366-1375).

Stefanie Ford ("Ford"), a vocational expert, testified.  The ALJ posed a hypothetical question to Ford, asking her to consider a hypothetical worker of Avance's age, education, and experience (no past relevant work) who could perform light work with the following limitations: can only occasionally stoop, kneel, crouch, or crawl; can only occasionally climb stairs and ramps; cannot climb ladders, ropes, or scaffolds; can only occasionally work overhead with the bilateral upper extremities;

---

[2] It is probable that the ALJ erred in dating the consultative examination in September 2020, and more likely he is referencing the October 2020 examination performed at Moonlight Examinations, LLC.  (Tr. 1905-1912).

can perform frequent but not constant fingering or feeling with the bilateral upper extremities; can perform work where interpersonal contact is superficial (brief and cursory social interaction); can understand, remember, and carry out simple instructions; can make judgments in simple work-related situations; and can tolerate occasional changes in a routine work setting.  Ford testified that such a hypothetical worker could perform the jobs of housekeeper and price tag ticketer.  Ford testified that the *Dictionary of Occupational Titles* does not specifically address the limitation in the overhead bilateral extremities but that she had experience, including observations of how the job of housekeeper is actually performed, which informed her opinion that Avance could perform the job.   (Tr. 1376-1379).

*ALJ's Decision:*

In his September 22, 2021, decision, the ALJ set forth the requirements Avance must meet in order to establish her disability for SSI purposes, and in order to establish entitlement to DWB.  Regarding DWB, Avance was required to prove that she was the widow of a deceased worker, had attained the age of 50, and had a disability that began before the end of the prescribed period.  In Avance's case, the prescribed period began on December 31, 2014, and expired seven years later, meaning that her CWB benefits hinged on establishing her disability on or before December 21, 2021.

The ALJ determined Avance had the following severe impairments: carpal tunnel syndrome ("CTS"), diabetes, obesity, degenerative joint disease of the knees and shoulder, degenerative disc disease, and depression.  The ALJ  identified hypertension as an impairment with no more than a minimal effect on her ability to perform basic work-like tasks.  Therefore, hypertension was deemed non-severe.

The ALJ found Avance did not have an impairment or combination of impairments that met a listing in 20 C.F.R., Part 404, Subpart P, Appendix 1. Specifically, the ALJ considered Listings 1.15 (skeletal spine disorder), 9.00 (endocrine disorders), 12.04, 12.06, and 12.08 (mental impairments).

Concerning Avance's mental impairments, the ALJ considered the four broad areas of functioning found in 20 C.F.R., Part 404, Subpart P, Appendix 1, the "paragraph B" criteria. He found Avance had mild limitations in two areas -- (1) in understanding, remembering, or applying information, and (2) in adapting or managing oneself.  He found Avance had moderate limitations in two other areas – (1) in interacting with others, and (2)in concentrating, persisting, or maintaining pace. The ALJ also found the evidence failed to establish the "paragraph C" criteria because Avance did not demonstrate a complete inability to function independently outside her home.

The ALJ assessed Avance to have the RFC to perform light work with the

limitations contained in the hypothetical question posed to Ford.  The ALJ also found that  Avance's subjective allegations were "not supported by the objective medical evidence."  (Tr. 1318).

The ALJ summarized the medical evidence, beginning with the treatment for CTS in 2015 through February 2021.  The ALJ addressed Avance's diabetes, noting treatment from 2016 onward with Trulicity, Metformin, and Novolog, and also noting non-compliance with medication regimens.  Recent records cited by the ALJ showed improvement in February 2020, evidenced by Avance's ability to walk 30 laps per day, and do chair exercises and jumping jacks.

The ALJ also considered Avance's neck, back, hip, knee, and shoulder pain, including imaging results (2018 and 2020 x-ray of her knees, 2018 MRI of right shoulder and 2018 cervical x-ray).  The ALJ also noted no MRI had been performed on her knees.  In addition, the ALJ observed that physical therapy was suggested in 2018 and 2019 for her shoulder, hip, and knee issues.

The ALJ reviewed treatment and medication Avance received for depression and anxiety, noting that her medications for mental impairments were currently prescribed by her primary care physician, and she was no longer being treated by a mental health professional.

The ALJ also considered the opinion evidence in the record, including:  (1) the

June 2018 opinion of Patricia Griffen, Ph.D. ("Griffen"), offered following a consultative mental health examination; (2) the May 2020 RFC of treating physician Dr. Stephen Sorsby ("Sorsby"); (3) the May 2020 arthritis RFC questionnaire completed by treating physician Mike C. Umerah ("Umerah"); (4) the August 2020 consultative eye examination of Stephanie Willett, O.D.; (5) the October 2020 consultative physical examination by certified Nurse Practitioner Ariel Jakes ("Jakes"); (6) the December 2020 consultative examination of Linda Dyer Hartsfield, Ed.D. ("Hartsfield"); and (7) the August and December 2018 statements of the state agency examiners.

The ALJ concluded Avance had no past relevant work.  Relying upon Ford's testimony, the ALJ found Avance could perform jobs (e.g., housekeeper, price tag ticketer) in the national economy.  Accordingly, the ALJ determined that Avance was not disabled.  (Tr. 1310-1324).

*Claim One – the ALJ erred by failing to fully and fairly develop the record*

The parties agree that the ALJ has a duty to fully and fairly develop the record. Even so, there is no bright line test for determining whether he has done so; the determination is made on a case by case basis.  *See Battles v. Shalala*, 36 F.3d 43 (8th Cir. 1994).  The key is whether the record provides the ALJ with ample information to allow an informed decision to be made.

Here, Avance focuses not so much on the absence of medical information in the record as the ALJ's treatment of the evidence. Avance lists thirteen different medical opinions rendered in the case, although one of the opinions predates the relevant period by more than five years (Dr. Parker's consultative examination from 2012 (Tr. 417)). Avance faults the ALJ for rejecting or not discussing many of these opinions, particularly faulting the ALJ for his rejection of the October 2020 findings of consultative examiner CNP Jakes. (Tr. 1905-1912). To be sure, the medical evidence of record is not easily digested. For example, Jakes recorded Avance could not ambulate without a walker in October 2020, while treating physician Sorsby reported a few months earlier, in May, that Avance had no need for a cane or other assistive device while standing or walking. (Tr. 1840, 1905). Treatment notes from UAMS Family Medical Center from around this time do not clarify – in October 2020 Avance was observed to have a normal gait and to have a goal of exercising 150 minutes per week, and in February 2021 she reported that she walked 30 laps (around 20 minutes) and did jumping jacks daily. (Tr. 1948, 1962).

Avance argues that the cure for the confusion is additional consultative examinations. The Court disagrees. The objective medical evidence in this case was ample, even voluminous, and the ALJ's decision was well-informed. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ not required to order additional

medical exams unless the existing medical record is insufficient).   Additional consultative reports would add to the record but not necessarily resolve the questions which the ALJ faced – the ALJ was required to determine Avance's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his [or her] limitations," *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001), and the ALJ was not obligated to fully embrace one medical opinion to the exclusion of others.  *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (where the medical record is adequately developed the ALJ not required to gather additional information).   Whether the ALJ properly weighed the medical evidence is a separate inquiry from whether the record was adequate.  It was.  There is no merit to Avance's first claim.[3]

*Claim Two – at Step Two of sequential evaluation, the ALJ erred by:  (a) erroneously assessing and weighing the opinion evidence regarding her mental impairments; (b) erroneously discounting her mental subjective complaints due to*

---

[3]

Included in her first claim for relief is Avance's argument that the ALJ "played doctor" by making his own medical findings rather than assessing the medical records to reach his conclusions.  *See Pate-Fires v. Astrue*, 564 F.3d 935, 946-947 (8th Cir. 2009).  While Avance no doubt disagrees with the ALJ, his findings were based in the evidence presented to him and not his freelance determinations.

*non-compliance, and (c) failing to develop the record regarding non-compliance and the lack of other opinion evidence*

*(a) Error regarding the opinion evidence*

At Step Two of the sequential evaluation the ALJ determined Avance's depression was a severe impairment.  Avance contends the ALJ erred by failing to find her generalized anxiety disorder was also a severe impairment.  Avance points to the June 2018 report of Griffen and the December 2020 findings of Hartsfield, both of whom diagnosed her with generalized anxiety disorder.  The ALJ acknowledged the opinions of both, and enumerated reasons they were not persuasive.  For example, both opinions were based, in part, on the subjective assertions of Avance.  The ALJ also cited Avance's daily activities, her 2018 discharge from mental health care due to non-compliance with appointments, Griffen's review of remote medical evidence, other "essentially normal psychological evaluation of record," and failure to take medications as prescribed.  (Tr. 1320).  These are valid considerations.  The ALJ was not obliged to accept Griffen and Hartsfield's opinions to the exclusion of any other evidence.  This seems particularly appropriate in this instance, where the ALJ deemed depression a severe impairment and made allowances for this in the RFC (e.g., the ALJ found Avance could perform work where the interpersonal contact is superficial (brief and cursory social interaction), she could understand, remember, and carry out simple instructions, could make judgments in simple work-related situations, and

11

could tolerate occasional changes in a routine work setting).  Avance does not carry her burden of demonstrating error by the ALJ in his treatment of her anxiety, and she does not establish which additional mental limitations, if any, would have been in order.

Further, the ALJ's failure to identify Avance's generalized anxiety disorder as a severe impairment at Step Two is ultimately of little legal significance because the ALJ is obliged to consider all of the claimant's impairments in crafting the RFC.  *See* 20 C.F.R. 416.945(a)(2).  The ALJ in this case carried out this obligation – he "considered all symptoms" when formulating the RFC.  (Tr. 1315).  Numerous references are made to Avance's anxiety.  (Tr. 1314, 1316-1320, 1332).  The ALJ considered all of Avance's impairments, severe and non-severe, in reaching the RFC conclusion.  Therefore, there is no reversible error.  *See, e.g., Pratt v. Kijakazi*, No. 4:21-CV-00094-SPM, 2022 WL 4534437, (E.D. Mo. Sept. 28, 2022).

*(b) Error in discounting her mental subjective complaints due to non-compliance*

Avance faults the ALJ's consideration of her subjective statements, alleging the ALJ's emphasis on non-compliance was misplaced.  The ALJ's consideration of non-compliance in the form of missing appointments and not taking medication was not improper.  Nor was it improper to observe that her mental health medications, when taken consistently, improved her symptoms.  (Tr. 1320).  More importantly, non-

compliance was not the sole factor cited by the ALJ in his assessment of subjective statements.  Avance's ability to care for her brother, as well as her ability to work as a self-employed caregiver, were relevant factors, as were her reported daily activities and the conservative and infrequent treatment provided by Sorsby.

The relevant factors to be considered are found in SSR 16-3p and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms . . . ; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 16-3p.  The ALJ is not required to explicitly discuss each relevant factor. *See Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

While Avance is correct that emphasis was placed on the objective medical evidence and her non-compliance, the ALJ considered more than those items in evaluating her subjective statements.  The ALJ  permissibly measured the subjective statements using the framework of the regulations and *Polaski*.[4]

---

[4] Avance also argues that her non-compliance was "perhaps" a product of her mental impairments. Docket entry no. 11, page 14.  She cites *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009), and *Hensley v. Colvin*, 829 F.3d 926 (8th Cir. 2016) in support.  These cases do not prevail.  In *Pate-*

(c)*Error in  failing to develop the record regarding non-compliance and the lack of other opinion evidence*

Avance's argument that additional opinion evidence was warranted was discussed as Claim One.  Citing *Grindley v. Kijakazi*, 9 F.4th 622 (8th Cir. 2021), she maintains the ALJ was required to seek clarifying evidence as to whether her non-compliance resulted from her mental illness. In *Grindley*, the plaintiff was diagnosed with fibromyalgia.  The claimed undeveloped issue in that case was whether the evidence supported Grindley's assertion that she had eighteen tender points, as she claimed, or whether the ALJ was correct in stating she had less than eleven tender points.  A pivotal difference in *Grindley* is that a dispute existed in the record on a particular issue.  Here, Avance points to no evidence to be clarified – instead, she suggests that "perhaps" her non-compliance was due to her mental illness.  The issue in this instance was not undeveloped so much as it was not mentioned.  Avance did not testify to an inability to comply with medical directives, nor did any medical provider suggest such an inability.  The ALJ did not err in failing to develop the record on this issue.

*Claim Three – the ALJ erred by reaching an RFC without support from either*

---

*Fires* the plaintiff's severe mental impairment was bipolar disorder I severe, with psychotic features, a much more profound impairment than Avance's.  564 F.3d at 937.  And in *Hensley* the Court found no evidence to show the failure to comply was a symptom of the plaintiff's mental illness.  Likewise, Avance does not provide such evidence.  829 F.3d at 935.

*an examining or treating source opinion evidence.*

Avance contends the ALJ "cherry-picked" portions of an RFC assessment made by a non-treating medical consultant in order to find her able to perform light work.  Docket entry no. 11, page 15.  According to Avance, this was error because the report of the consultant, a state agency examiner, did not constitute substantial evidence.  Avance points to findings by treating physician Sorsby to support her claim that she could perform no more than sedentary work.[5]

The ALJ did not, however, simply opt for the state agency consultant over Sorsby.  In addition to the state agency findings, the ALJ addressed reports of six other treating and consultative examiners, including Sorsby's treatment and opinions. The ALJ noted Sorsby's opinion that  Avance was capable of performing low stress jobs, that she could walk four blocks, and her impairments would rarely interfere with the attention and concentration needed to perform simple tasks.  Ultimately, the ALJ found Sorsby's opinions unpersuasive in light of the overall medical evidence, while also noting Avance's non-compliance by not taking her medications at all or as directed.

---

[5] The ALJ is not bound to select a single opinion as the RFC.  Indeed, since the ALJ must consider the entirety of the record, a single opinion is not required.  *See Hensley v. Colvin*, 829 F.3d 926 (8th Cir. 2016) (no requirement that an RFC finding be supported by a specific medical opinion).

The ALJ also considered other opinions and findings, including treating doctor Umerah's conclusion that Avance could only walk one block, would need a cane or walker, and was incapable of even low stress jobs.  Also noted was Jakes' consultative examination, who also found Avance needed a walker to ambulate while finding a full range of motion in her spine, shoulders, knees, ankles, wrists, hands, and elbows. Jakes also opined Avance could lift 20 pounds and frequently stand, walk, and sit.

In summary, the ALJ was faced with a great deal of medical evidence of record, as well as opinion evidence and Avance's testimony.  He was tasked with marshaling this information and determining her RFC.  The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion.  In this instance, evidence can be cited to support both sides of the RFC dispute.  The test, however, is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).  This test is satisfied in this case.

Accordingly, the Court recommends that the final decision of Kijakazi be affirmed and Avance's complaint be dismissed with prejudice.

IT IS SO RECOMMENDED this 11th day of April, 2023.

_____
UNITED STATES MAGISTRATE JUDGE